**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MIESHIA DOUGLAS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GERBER PRODUCTS COMPANY, <br><br> Defendant. | Case No. 2:21-cv-12354 <br><br> **(JURY TRIAL DEMANDED)** |

## INTRODUCTION

Plaintiff Mieshia Douglas ("Plaintiff") by and through undersigned counsel brings this action against Gerber Products Company ("Defendant" or "Gerber") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this case as a result of Defendant's negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metal and/or perchlorate or other ingredients that do not conform to the labels, packing, advertising and statements of Defendant's products sold throughout the United States, including this District. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class including: (i) requiring full disclosure of all such substances and ingredients in Defendant's marketing advertising and labeling; (ii) requiring testing of ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class.

**PARTIES**

2.     Defendant Gerber Products Company is a Michigan corporation with its principal place of business in Florham Park, New Jersey.

3.     Plaintiff Mieshia Douglas is an individual and resident and citizen of the state of South Carolina and purchased Defendant's Baby Foods (defined below) for consumption by her child.

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

5.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New Jersey and has sufficient minimum contacts with New Jersey.

6.     Venue is proper in this District under 28 U.S.C. § 1391(d) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**BACKGROUND FACTS**

7.     Gerber is an American manufacturer of Baby Food Products.  Gerber claims to be one of the "world's most trusted name[s] in baby food."[1]  Gerber sells nearly 200 different baby food products in 80 countries.  Gerber was founded with the mission to "give babies the best start in life."[2]  As of 2017, Gerber controlled 61 percent of the baby food market in the United States.[3]

---

[1] https://www.gerber.com/nestle_nutrition/default.aspx. (Last accessed April 30, 2021).
[2] https://www.gerber.com/about-us. (Last accessed April 30, 2021).
[3] https://www.brandchannel.com/2017/04/15/5-questions-gerber-041517. (Last accessed April 30, 2021).

8.     Parents like Plaintiff trust manufacturers like Defendant to sell baby food that is safe nutritious and free from harmful toxins, contaminants and chemicals.  Parents purchase baby food with the expectation that they are free from heavy metals, substances known to have significant, harmful health effects.

9.     Because consumers do not have the scientific knowledge necessary to determine whether the Baby Food contains heavy metals or to know or ascertain the true nature of the ingredients of the Baby Food, they must rely on Defendant to honestly represent the contents of its products.

10.     A recent congressional report from the Subcommittee on Economic and Consumer Policy found that many of the products by the country's largest commercial baby food manufacturers, including Gerber, "contain significant levels of tox heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[4]

11.     Yet nowhere in the labeling, advertising, statements, warranties, and/or packaging does Defendant disclose that its Baby Foods include and/or have a high risk of containing heavy metal or other ingredients that do not conform to the labels, packaging and statements.

12.     Indeed, the Baby Foods have been shown to contain significant levels of arsenic, mercury, lead, cadmium, and/or perchlorate[5]-all known to pose health risks to humans and particularly infants.

---

[4] https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (Last Accessed April 30, 2021).
[5] https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf ("Healthy Babies Bright Futures Report"). (Last accessed April 30, 2021).

13.    Despite this, Defendant warrants, promises, represents, misleads, labels and/or advertises that the baby foods are free of any heavy metal, perchlorate and/or unnatural ingredients by making assurances that the foods are natural and safe for infant consumption.

### FACTUAL ALLEGATIONS

14.    The Baby Foods include the following:

- Gerber Single Grain Cereals

- Gerber Multigrain Cereals

- Gerber Oatmeal & Barley Cereal

- Gerber Fruit & Probiotic Infant Cereal

- Gerber Organic Single Grain Cereal

- Gerber Organic Cereal

- Gerber Heart Bits Multigrain Cereal

- Gerber Lil' Bits Cereal

- Gerber DHA & Probiotic

- Gerber Baby Food Puree

- Gerber Incredipouch Baby Foods

- Gerber 1st Foods Baby Food

- Gerber Natural 1st Foods Baby Food

- Gerber 2nd Foods Baby Food

- Gerber 2nd Foods Cereal

- Gerber Organic 2nd Foods Baby Food

- Gerber Natural 2nd Foods Baby Food

- Gerber 3rd Foods Baby Food

- Gerber Toddler Foods

- Gerber Organic Toddler Foods

- Gerber Lil' Mixers

- Gerber Lil' Crunchies

- Gerber Organic Lil' Crunchies

- Gerber Puffs

- Gerber Organic Puffs

- Gerber Yogurt Melts

- Gerber Organic Yogurt Melts

- Gerber Fruit & Veggie Melts

- Gerber Arrowroot Cookies

- Gerber Banana Cookies

- Gerber Soft Baked Grain Bars

- Gerber Teethers

- Gerber Organic Teethers

- Gerber Teether Wheels

- Gerber Lil' Biscuits

- Gerber Organic Biscuits

- Gerber BabyPops

- Gerber Animal Crackers

- Gerber Organic Grain & Grow Soft Basked Grain Bars

- Gerber Organic Fruit & Veggie Bars

- Gerber Yogurt Blends Snack

- Gerber Soothe 'n' Chew

- Gerber Pick-ups

- Gerber Mealtime Harvest Bowls

- Gerber Lil' Sticks

- Gerber Graduates and Freshful Start

15.     At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained heavy metals, had a risk of containing heavy metals and/or were not sufficiently tested for heavy metals.  During this time, Defendant omitted any reference to the presence, or risk of the presence, of heavy metals from the Baby Foods' packaging.

16.     Defendant knew or should have known that heavy metals were a potentially dangerous contaminant that pose health risks to babies and children.  Defendant knew or should have known that the standards for the presence of heavy metals in baby food have become increasingly stringent in recent years.

17.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence, or risk, of heavy metals in the Baby Foods.

18.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for heavy metals in the Baby Foods.

19.     Defendant knew that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies.  Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence, or risk, of heavy metals and for testing for heavy metals.

20.     A recent congressional report from the Subcommittee on Economic and Consumer Policy found that many of the products by the country's largest commercial baby food manufacturers, including Gerber, "contain significant levels of tox heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[6]

21.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[7]

22.     Arsenic, lead, mercury and cadmium, four heavy metals found in the Baby Foods, are neurotoxins.  Exposures to these four heavy metals "diminish quality of life, reduce academic achievement and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[8]

23.     The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[9]  Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ.[10]

24.     Research continues to confirm that exposures to food containing arsenic, lead, mercury and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[11]

---

[6] https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (Last Accessed April 29, 2021).
[7] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf ("House Report") (Last Accessed April 29, 2021).
[8] Healthy Babies Bright Futures Report, at 13.
[9] Healthy Babies Bright Futures Report, at 6.
[10] *Id.*, at 1.
[11] *Id.*, at 1.

25.     The Baby Foods may contain arsenic which, when exposed to children early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[12] "There is no evidence that the harm caused by arsenic is reversible."[13]  Arsenic exposure also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[14]

26.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set standard for the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA).[15]

27.     Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[16]  The FDA is also considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[17]

28.     Defendant used at least 67 batches of rice flour testing more than 90 ppb inorganic arsenic.[18]

---

[12] *Id.*, at 13.
[13] *Id.*, at 13.
[14] https://pubmed.ncbi.nlm.nih.gov/23570911/ (Last accessed April 29, 2021).
[15] https://www.fda.gov/iceci/enforcementactions/warningletters/2016/ucm506526.html
[16] https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (Last accessed April 29, 2021).
[17]https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM493152.pdf (Last accessed April 29, 2021).
[18] House Report, at 19.

29.     While Defendant did not provide inorganic arsenic results for all of its ingredients, test results for conventional rice flour revealed that Defendant routinely used flour with over 90 ppb inorganic arsenic.[19]

30.     The Baby Foods also may contain lead, which is another carcinogen and developmental toxin known to cause health problems.

31.     Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty and reduced postnatal growth."[20]

32.     Exposure to lead in food builds up over time.   Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental and reproductive disorders, as well as serious injuries to the nervous system and other organs and body systems.

33.     Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems.  No safe level of exposure has been identified."[21]

34.     One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[22]  Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD). [23]

35.     Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer

---

[19] *Id.*
[20] House Report, at 11.
[21] https://www.edf.org/sites/default/files/edf_lead_food_report_final.pdf (Last accessed April 29, 2021).
[22] *Id.* at 7.
[23] www.mdpi.com/1660-4601/16/3/382/html (Last accessed April 29, 2021).

Reports, have agreed that lead in baby foods should not exceed 1 ppb.[24]  The European Union has set the maximum lead level in infant formula to 20 ppb.[25]

36.     Defendant used an ingredient, conventional sweet potatoes, with 48 ppb lead. Gerber also used twelve other batches of sweet potato that tested over 20 ppb for lead, maxim lead level in infant formula.[26]

37.     The average amount of lead in Defendant's tested juice concentrates was 11.2 ppb – more than 10 times the FDA's limit for lead in bottled water.  Over 83% of the juice concentrates tested showed greater than 1 ppb, which is Consumer Reports' recommended limit for fruit juices.[27]  The results for sweet potatoes and juices demonstrated Gerber's willingness to use ingredients containing dangerous levels of lead.

38.     The Baby Foods also may contain mercury, which increases the risk of cardiovascular disease and can cause vision, intelligence and memory problems for children exposed in utero.  Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[28]  Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[29]

39.     The EPA has set a maximum mercury level in drinking water to 2 ppb.[30]

40.     Finally, the Baby Foods may contain cadmium which has been observed to cause anemia, liver disease and nerve or brain damage in animals eating or drinking cadmium.

---

[24] https://www.washingtonpost.com/ (Last accessed April 29, 2021).
[25] *Id.*
[26] House Report, at 27.
[27] House Report, at 28.
[28] Healthy Babies Bright Future Report, at 14.
[29] House Report, at 12-13.
[30] House Report, at 32.

41.     Cadmium is linked to neurotoxicity, cancer and kidney, bone and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[31]  Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[32]   The U.S. Department of Health and Human Services has determined that cadmium and cadmium compound are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[33]

42.     The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[34]

43.     Defendant does not test all of its product ingredients for cadmium.  Of those it does test, it accepts ingredients with levels of this metal.  Defendant used multiple batches of carrots containing as much as 87 ppb cadmium and 75% of the carrots Defendant used had more than 5 ppb of cadmium.[35]

44.     Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals."[36]

---

[31] Healthy Babies Bright Futures, Report, at 14.
[32] *Id.*
[33] https://www.atsdr.cdc.gov/phv/phs.asp?id=46&tid=15 (Last Accessed April 29, 2021).
[34] House Report, at 29.
[35] House Report, at 32.
[36] https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (Last accessed April 30, 2021).

45.     Despite the known risks of exposure to these heavy metals, Defendant has negligently, recklessly and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiff.

46.     Additionally, Defendant knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it the primary source of food for the child.  This leads to repeated exposure of the heavy metals to the child.

47.     Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poising, injury and/or disease can occur.

48.     Defendant's omissions are material, false, misleading and reasonably likely to deceive the public.  This is true especially considering the long-standing campaign by Defendant to market the Baby Foods are healthy, safe, and high-quality to induce consumers, such as Plaintiff, to purchase the products.

49.      At all times during the Class Period, Defendant knew or should have known that Baby Foods contained perchlorate, were at risk of containing perchlorate, and/or were not sufficiently tested for perchlorate.  During this time, Defendant omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

50.     Defendant knew or should have known that perchlorate is potentially dangerous contaminant that poses health risks to babies and children.

51.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

52.    Defendant knew or should have known that it owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

53.    Defendant knew that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies.   Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

54.    Perchlorate disrupts thyroid functions that are crucial to brain development. Perchlorate has been "linked to IQ loss among children born to mothers with thyroid dysfunction."[37]

55.    The levels of perchlorate in children's food have increased significantly from 2005. Perchlorate-which is both a naturally occurring and manmade chemical-was approved by the FDA in 2005 for use as an antistatic in plastic food packing.   In 2016, the FDA expanded the approval to cover dry food handling equipment.   Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

56.    The dangers of perchlorate in human food are recognized by the FDA.[38]

57.    Still, certain Baby Foods are sold by Defendant that may contain levels of perchlorate.

58.    Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive Gerber lines of baby food products across the United States including the Baby Foods.

_____

[37] Healthy Babies Bright Futures Report, at 8.
[38] https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (Last accessed April 30, 2021).

59.     Defendant has represented a commitment to using real and simple ingredients. Indeed, the packaging emphasizes to consumers that the Baby Foods are natural or organic.

60.     Defendant had a duty to ensure the Baby Food lived up to these representations and marketing positioning the Baby Food as high-quality and premium.  As such, Defendant knew or should have known that the Baby Foods had a high risk and/or actually included heavy metals, perchlorate and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements, including only natural organic or other ingredients.

61.     Based on these false representations, Defendant charges a premium, knowing that the claimed natural make-up of the Baby Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking more expensive baby food products.

62.     Additionally, Defendant knew or should have known that its ingredients and the final products, could contain materials such as toxins, heavy metals and perchlorate and yet they did not test all ingredients and finished products, including the Baby Foods, for such materials.

63.     Third-party testing has made clear that the Baby Foods may in fact contain levels of both heavy metals and/or perchlorate.

64.     Defendant knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Baby Foods and the target of its advertising and statements.

65.     Defendant intended that the warranties, advertising, labeling, statements and representations would be considered by the end purchasers of the Baby Foods, including Plaintiff and the proposed Class.

66.     Defendant directly marketed to Plaintiff and the proposed Class through statements on its website, labeling, advertising and packaging.

14

## CLASS ACTION ALLEGATIONS

67.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

68.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> **The Class:**
>
> All persons in the United States who purchased the Baby Foods for household or business use, and not for resale.

69.     Excluded from the Class is Gerber Products Company and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

70.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

71.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

72.     The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiff is informed and believes that there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from the Defendant's records. Members of the Class may be notified

of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

73.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether Defendant owed a duty of care to Plaintiff and the Class;

(c)     Whether Defendant knew or should have known that the Baby Foods contained, or may contain, heavy metals;

(d)     Whether Defendant knew or should have known that the Baby Foods contained, or may contained, perchlorate;

(e)     Whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural and safe for human infant consumption;

(f)     Whether Defendant wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious and safe for consumption;

(g)     Whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural;

(h)     Whether Defendant wrongfully represented and continues to represent that the manufacturing of the Baby Foods are subjected to rigorous standards, including testing for heavy metals;

(i)     Whether Defendant wrongfully failed to disclose that the Baby Foods contained, or may contain, heavy metals and/or perchlorate;

16

(j)     Whether Defendant's representations in advertising, warranties, packaging and/or labeling are false, deceptive and misleading;

(k)     Whether those representations are likely to deceive a reasonable consumer;

(l)     Whether a reasonable consumer would consider the presence, or risk of, heavy metals and/or perchlorate as a material fact in purchasing baby food;

(m)     Whether Defendant had knowledge that those representations were false, deceptive and misleading;

(n)     Whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive and misleading;

(o)     Whether representations that a product is healthy, of superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, lead and/or perchlorate are material to a reasonable consumer;

(p)     Whether Defendant's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse or confound consumers acting reasonably;

(q)     Whether Defendant breached its express warranties;

(r)     Whether Defendant breached its implied warranties;

(s)     Whether Defendant engaged in unfair trade practices;

(t)     Whether Defendant engaged in false advertising;

(u)     Whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

(v)     Whether Defendant was unjustly enriched by its charging and failure to fully refund excessive auto insurance premiums;

17

(w)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(x)     Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(y)     The amount and nature of relief to be awarded to Plaintiff and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

74.     Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

75.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of other members of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

76.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Class are relatively small compared to the burden and expense that would be required to individually litigation their claims against the Defendant, so it would be

impracticable for members of the Class to individually seek redress for the Defendant's wrongful conduct.

77.     Even if members of the Class could afford individual litigation, the court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

78.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

79.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

## CAUSES OF ACTION

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**Breach of Express Warranty**
**(Plaintiff and Other Members the Class)**

80.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

81.     Plaintiff brings this count on behalf of herself and other members of the Class.

82.     Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiff and the Class.

83.    Defendant expressly warranted, advertised and represented to Plaintiff and the Class that its Baby Foods the made from the "highest quality ingredients."

84.    Defendant made these express warranties regarding the Baby Foods' quality, ingredients and fitness for consumption in writing on the Baby Foods' packaging and labels through its website, advertisements and marketing materials.  These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Foods.

85.    Defendant's advertisements, warranties and representations were made in connection with the sale of the Baby Food to Plaintiff and the Class.  Plaintiff and the Class relied on Defendant's advertisements, warranties and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

86.    Defendant's Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they:

      a.   Are not natural or suitable for consumption by human babies; and

      b.   Contain or may contain levels of various heavy metals and/or perchlorate.

87.    Defendant was on notice of this breach as they were aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed tits baby food products as unhealthy and containing dangerous levels of heavy metals.

88.    Privity exists because Defendant expressly warranted to Plaintiff and the Class through the warranting, packaging, marketing and labeling that the Baby Foods were healthy, natural and suitable for consumption and by failing to make any mention of heavy metals or other unnatural ingredients.

89.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

90.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(Plaintiff and Other Members the Class)**

91.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

92.     Plaintiff brings this count on behalf of herself and other members of the Class.

93.     There was a sale of goods from Defendant to Plaintiff and the Class.

94.     At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was natural, safe and appropriate for consumption by human infants.   Plaintiff and the Class relied on Defendant promises and affirmations of fact when they purchased the Baby Foods.

95.     The Baby Foods were not fit for their ordinary use (consumption by babies) and did not conform to Defendant's affirmations of fact and promises as they contained or were at risk

of containing heavy metals and/or other ingredients or contaminants that do not conform to the packaging.

96.     Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

97.     Defendant was on notice of this breach, as it was aware of the heavy metals included or at risk of being included in the Baby Foods and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby foods were unhealthy, contaminated and potentially dangerous, as well as the extensive press coverage of the investigation.

98.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing and labeling that the Baby Foods were natural and suitable for consumption by babies, and by failing to make any mention of heavy metals or other unnatural ingredients.

99.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate and/or other ingredients.

100.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
### Fraudulent Misrepresentation
### <u>(Plaintiff and Other Members the Class)</u>

101.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

102.    Plaintiff brings this count on behalf of herself and other members of the Class.

103.    Defendant falsely represented to Plaintiff and the Class that the Baby Foods are made from the "highest quality ingredients."

104.    Defendant intentionally, knowingly and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Baby Foods.

105.    Defendant knew that its representations about the Baby Foods were false in that the Baby Foods contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements. Defendant allowed its packaging, labels, advertisements, promotional materials and websites to intentionally mislead consumers such as Plaintiff and the Class.

106.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment.  Given the deceptive manner in which Defendant advertised, represented and otherwise promoted the Baby Foods, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

107.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.

108.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
**Fraud by Omission**
**(Plaintiff and Other Members the Class)**

109.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

110.    Plaintiff brings this count on behalf of herself and other members of the Class.

111.    Defendant concealed from and failed to disclose to Plaintiff and the Class that their Baby Foods contained, or were at risk of containing, heavy metals, perchlorate and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

112.    Defendant had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability and risks of the Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics and suitability of the Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could have reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising and websites prior to purchasing the Baby Foods.

113.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Baby Foods.

114.    Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment.  The detriment is evident from the true quality, characteristics and ingredients of the

Baby Foods, which is inferior in comparison to Defendant's advertisements and representations of the Baby Foods.

115.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of dangerous levels of heavy metals and toxins.

116.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

### FOR A FIFTH COLLECTIVE CAUSE OF ACTION
#### Negligent Misrepresentation
#### (Plaintiff and Other Members the Class)

117.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

118.    Plaintiff brings this count on behalf of herself and other members of the Class.

119.    Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution and sale of the Baby Foods.

120.    Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing and selling products to Plaintiff and the Class that do not have the ingredients qualities, characteristics and suitability for consumption as advertised by Defendant and by failing to promptly remove the Baby Foods from the marketplace or to take another appropriate remedial action.

121.    Defendant knew or should have known that the ingredients, qualities and characteristics of the Baby Foods were not as advertised or suitable for their intended use (consumption by babies) and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) certain Baby Foods were not natural

because they contained, or were at risk of containing, levels or perchlorate; (2) the Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained or had a risk of containing levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated or at risk of being adulterated by heavy metals; and (4) the Baby Foods were otherwise not as warranted and represented by Defendant.

122.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they would have paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.

123.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

**FOR A SIXTH COLLECTIVE CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiff and Other Members the Class)**

124.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

125.    Plaintiff brings this count on behalf of herself and other members of the Class.

126.    Substantial benefits have been conferred on Defendant by Plaintiff and the Class through their purchase of the Baby Foods.  Defendant knowingly and willingly accepted and enjoyed these benefits at the expense of Plaintiff and the Class.

127.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Baby Foods would have the qualities, characteristics, ingredients and suitability for consumption represented and warranted

by Defendant.  As such, it would be unjust for Defendant to retain the benefit of the payments under the circumstances.

128.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it unjust for Defendant to retain the benefits and not return the value of payments made by Plaintiff and the Class.

129.    Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

130.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against the Defendant as to each and every count including:

A.  An order declaring this action to be a proper class action, appointing Plaintiff and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.  An order enjoining Defendant from selling the Baby Foods until the levels of heavy metals and/or perchlorate are removed or full disclosure of the presence of such appears on all labels, packing and advertising;

C.  An order enjoining Defendant from selling the Baby Foods in any manner suggesting or implying that they are healthy, natural and safe for consumption;

D.  An order requiring Defendant to engage in aa corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein and injunctive relief to remedy Defendant's past conduct;

F.  An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising or a violation of law, plus pre- and post-judgment interest thereon;

G.  An order requiring Defendant to disgorge or return all monies, revenues and profits obtained by means of any wrongful or unlawful act or practice;

H.  An order requiring Defendant to pay punitive damages on any count so allowable;

I.  An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

J.  An order providing for all other such relief as may be just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 9, 2021

MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN LLP

By: /s/ Thomas A. Brown II
       Thomas A. Brown II
John M. Bradham (*Pro Hac Vice Forthcoming*)
Peter B. Katzman (*Pro Hac Vice Forthcoming*)
444 Madison Avenue, 4th Floor
New York, New York 10022
Tel: (212) 695-8050
Email: Tbrown@msbllp.com
       Jbradham@msbllp.com

Pkatzman@msbllp.com

-and-

**ANASTOPOULO LAW FIRM LLC**

Roy T. Willey, IV (*Pro Hac Vice Forthcoming*)
Eric M. Poulin *(Pro Hac Vice Forthcoming)*
Blake G. Abbott *(Pro Hac Vice Forthcoming)*
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Fax: (843) 494-5536
Email: roy@akimlawfirm.com
      eric@akimlawfirm.com
      blake@akimlawfirm.com